**07 CIV. 5604**

Himmel & Bernstein, LLP
Attorneys for Plaintiff
928 Broadway, Suite 1000
New York, NY 10010
(212) 631-0200
Attorney of Record:
    Tracey S. Bernstein, Esq. (TB-0405)

*JUDGE CONNER*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
JOEL KLAUSMAN,

                        Plaintiff,                              **COMPLAINT**

            -against-
                                                                2007 Civ. _____
CHROMAGEN USA INC, MAXINE MORGAN INC,
and ROGER EICHENHOLTZ,
                                                                JURY TRIAL DEMANDED

                        Defendants.
------------------------------------------------------------x

    Plaintiff Joel Klausman ("plaintiff" or "Mr. Klausman"), by his attorneys Himmel & Bernstein, LLP, complaining of defendants Chromagen USA Inc., Maxine Morgan, Inc. and Roger Eichenholtz (collectively "defendants"), alleges as follows:

1.    Plaintiff brings this action against defendants for breach of contract, defamation and violations of New York State Labor Law §198.

## I. PARTIES, JURISDICTION, AND VENUE

2.    Plaintiff Joel Klausman is a resident of the State of New Jersey and resides at 4 Crooked Stick Place, Monroe Township, New Jersey.

3. Upon information and belief, Chromagen USA Inc. ("Chromagen") is a Delaware Corporation with its principal place of business at 8 John Walsh Boulevard, Peekskill, New York.

4. Upon information and belief, Maxine Morgan Inc. ("MMI") is a Delaware Corporation with its principal place of business at 8 John Walsh Boulevard, Peekskill, New York.

5. Upon information and belief, defendant Roger Eichenholtz is a resident of the State of New York and resides at 2595 Evergreen Street, Yorktown Heights, New York.

6. Mr. Eichenholtz is the Chief Executive Officer of both Chromagen and MMI (collectively, the "Corporate Defendants") and, upon information and belief, sole owner and stockholder of both Chromagen and MMI.

7. Upon information and belief, the Corporate Defendants are in the business of distributing the ChromaGen product which is a hyploscopic lens used for, among other things, the treatment of and assistance with academic skills disorder, reading dyslexia and color deficiency (the "Chromagen System").

8. This court has jurisdiction of the subject matter under 28 U.S.C. §1332(a)(2) in that the action is between a citizen of another state and a citizen of this state and the amount in controversy exceeds $75,000 exclusive of interest and costs.

9. Venue is proper in the Southern District of New York under 28 U.S.C. §§1391(a)(1) and (2), in that the defendants reside in this district within the meaning of 28 U.S.C. §1391(c), and a substantial part of the events or omissions giving rise to this action occurred in this district.

## II.   AS AND FOR A SECOND CAUSE OF ACTION
### (Breach of Contract)

10. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 9 above, with the same force and effect as if fully set forth herein.

11. Mr. Klausman was hired by Mr. Eichenholtz to provide employment services for the Corporate Defendants on or about February 27, 2006. Defendant hired Mr. Klausman to work

for the Corporate Defendants in 2006 due in large part to his then 15 years of sales and marketing experience in the optical business.

12. Mr. Klausman was hired to be Chromagen's Senior Vice president of Marketing. His primary responsibilities were to build a guild of optometrists to dispense the Chromagen System.

13. Prior to accepting full-time employment with the Corporate Defendants, Mr. Klausman had been working for Allison USA ("Allison") as its Regional Manager with an annual salary of $120,000 and full benefits.

14. In order to induce Mr. Klausman to resign his position with Allison and not accept other potential employment offers, defendants provided him with, among other things, an annual salary of $150,000 and payment of his medical benefits.

15. On or about January 2, 2007, Mr. Klausman accepted an offer of employment from another company and stopped providing services for the Corporate Defendants.

16. Mr. Klausman accepted this offer of new employment because the Corporate Defendants had failed to pay him all the salary due and owing him for services he performed for the Corporate Defendants.

17. From February 27, 2006 to December 31, 2006, the Corporate Defendants accepted Mr. Klausman's services as their Senior Vice President, Marketing for Chromagen.

18. Throughout the term of his employment with the Corporate Defendants Mr. Klausman performed all duties requested of him without problem or complaint from the Corporate Defendants.

19. From February 27, 2006 to December 31, 2006, Mr. Klausman was paid a total sum of $29,650 by the Corporate Defendants in wages as evidenced by the Form 1099s filed by the Corporate Defendants with the United States Treasury.

21. On March 5, 2007, Mr. Eichenholtz paid Mr. Klausman an additional sum of $5,000 without withholdings towards the money due and owing Mr. Klausman as salary for his work during the period February 27, 2006 to December 31, 2006.

22. Under the terms of his compensation agreement, Mr. Klausman should have received the approximate total sum of $125,892.85 from the Corporate Defendants as W-2 wages for the services he rendered on behalf of the Corporate Defendants as their Senior Vice President, Marketing for Chromagen.

23. As such, the Corporate Defendants owe Mr. Klausman the approximate sum of $91,242.85 in salary for services rendered plus a sum representing the overpayment in taxes made by Mr. Klausman due to the Corporate Defendants improperly failing to withhold taxes from his paychecks.

24. As a result, Mr. Klausman is entitled to a judgment against the Corporate Defendants in an amount no less than $91,242.85 plus an additional sum representing Mr. Klausman's tax overpayment.

### III.    AS AND FOR A SECOND CAUSE OF ACTION
(Labor Law §198)

25. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 24 above, with the same force and effect as if fully set forth herein.

26. On or about February 27, 2006, Mr. Klausman was hired by the Corporate Defendants as Chromagen's Senior Vice President of Marketing.

27. Mr. Klausman was entitled to a salary of $150,000 per annum.

28. Mr. Klausman worked for the Corporate Defendants from February 27, 2006 through December 31, 2006.

29. Despite his working for defendants from February 27, 2006 through and including

December 31, 2006, the Corporate Defendants failed to pay Mr. Klausman the full amount of the salary due and owing him for his services.

30. As a result defendants owe Mr. Klausman approximately $91,242.85 in salary for the services he provided to the Corporate Defendants.

31. Mr. Klausman and his attorney have made several written and oral requests to the Defendants to pay the balance of Mr. Klausman's salary for the services he rendered to the Corporate Defendants.

32. To date, the Corporate Defendants have refused to pay Mr. Klausman the salary due and owing him for his services.

33. The Corporate Defendants' failure to pay Mr. Klausman his salary for the services he provided constitutes a violation of New York Labor Law §198.

34. Under Labor Law §198(1-a) Mr. Klausman is also entitled to recover his reasonable attorneys' fees from the Corporate Defendants.

35. The Corporate Defendant's refusal to pay Mr. Klausman the salary due and owing Mr. Klausman was willful in that the defendants have attempted to avoid their obligation to Mr. Klausman by threatening him and his wife with unfounded criminal prosecution if he pursues his claim for wages and by defaming Mr. Klausman to business associates and acquaintances.

36. That the Corporate Defendants have willfully refused to pay this money is also evidenced by the fact that this is not the first time defendants have refused to pay wages due and owing an employee.

37. Upon information and belief, defendants refused to pay salary due and owing former employees Anita Steinfeld and Kelly Montalvo.

38. Upon information and belief, Mr. Eichenholtz was prosecuted by the Nassau County District Attorney's office and agreed to a plea bargain whereby he would pay all monies due and owing Ms. Steinfeld as salary.

39. Under Labor Law §198(1-a), the Corporate Defendants' willful refusal to pay Mr.

Klausman the salary due and owing him entitles Mr. Klausman to recover liquidated damages.

40. As such, Mr. Klausman is entitled to judgment against the Corporate Defendants in an amount no less than $91,242.85 plus liquidated damages and attorneys' fees in an amount to be determined

### IV. AS AND FOR A SECOND CAUSE OF ACTION
### (Libel Per Se)

41. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 40 above, with the same force and effect as if fully set forth herein.

42. On or about March 19, 2007, an identical, undated letter, attached hereto as Exhibit A and incorporated herein by reference (the "Letter"), was received by Mr. Stefan Haas of The Eye Emporium, Mr. Arthur Singer of Laufler Vision World, Mr. Stuart Eiss of Eiss Optical, Dr. Alan Minkoff and John Benitisia of Metro Optics Eyewear.

43. Messrs. Haas, Singer, Eiss, Minkoff and Benitisia are professional acquaintances of Mr. Klausman who he has done business with on behalf of the Corporate Defendants as well as prior employers.

44. The Letter was sent to Messrs. Haas, Singer, Eiss, Minkoff and Benitisia by Mr. Eichenholtz on behalf of the Corporate Defendants and himself.

    In the Letter defendants state, among other things, about Mr. Klausman that:

    (a) "Mr. Klausman perpetrated a fraud against me and my companies"

    (b) "he has misrepresented himself, his associations and important policies and information concerning my products".

    (c) "Furthermore, by deception and material distortion of critical information, he has 'bilked' my companies out of $42,575.00. This includes monies he wrongfully took from you as deposits ($4,000) and had diverted as 'payment to himself'."

    (d) "Joel will be charged with fraud in a forthcoming lawsuit; he will soon be

    notified by a US Attorney that he is a 'Target' for a federal investigation for fraud; he will also be notified of a 10 year IRS audit on his personal returns."

    (e) "As recently as March 6th. At a 10 Minute meeting at my office, where Joel traveled to pick up a check for $5,000 under false pretenses, . . . "

    (f) Mr. Klausman "took false deposits from" four doctors.

    (g) "Please contact Joel directly for your refund; he alone is responsible for returning your money that he 'conned' from you!"

    (h) "I have the task of collecting the $42,000 that he illegally received from me."

    (i) "I'm sure there were similar problems when he worked for Luxottica and Allison."

45. Each and every one of these written statements whether taken individually or collectively are false and defamatory in that Mr. Klausman never engaged in fraud, "conned" any clients of the Corporate Defendants out of their money, "'bilked'" the Corporate Defendants out of any money or engaged in any other illegal, unlawful or fraudulent practices.

46. These false written statements constitute libel per se as they are accusations against Mr. Klausman of serious criminality in that they accuse him of larceny, fraud and tax evasion.

47. These false written statements constitute libel per se as they are also accusations against Mr. Klausman of dishonesty, lack of integrity and untrustworthiness and directly impugn his professional reputation.

48. Upon information and belief, defendants sent this identical Letter to several other optical stores and optometrists with whom Mr. Klausman worked, and sold the Chromagen System to, during his tenure with the Corporate Defendants.

49. Defendants had no basis for forwarding the Letter to Messrs. Haas, Singer, Eiss, Minkoff and Benitisia or any other optical stores with whom Mr. Klausman had dealings or sold a Chromagen System to.

50. Upon information and belief, defendants took such action for the purpose of damaging

Mr. Klausman's reputation for honesty and integrity within his profession and to intimidate Mr. Klausman into dropping his civil claims against defendants.

51. By letter dated March 14, 2007 and email dated March 15, 2007, Mr. Eichenholtz threatened to file criminal charges and make plaintiff a "Target" of a federal criminal investigation if plaintiff did not accept the terms defendants sought to resolve the claims raised by plaintiff for payment of his earned but unpaid wages.

52. Upon information and belief, defendants also sent the Letter with the intent of diverting their own wrongful conduct in taking money from Messrs. Haas, Singer, Eiss, Minkoff and Benitisia and not providing them with the Chromagen System they had paid for.

53. Upon information and belief, defendants sent the Letter knowing that they had been paid $5,000 in deposit money ($1,000 each) by these four (4) optical stores and one optometrist for the purchase of the Chromagen Kit as evidenced by checks made payable to Chromagen USA and deposited in the Corporate Defendants' bank account.

54. Upon information and belief, the Corporate Defendants were fully aware of all monies they paid to Mr. Klausman as evidenced by the 1099s issued to Mr. Klausman by Chromagen and MMI.

55. As a result of defendants' dissemination of false and defamatory statements about Mr. Klausman, Mr. Klausman is entitled to recover monetary damages for the emotional and economic losses he has suffered in an amount no less than $1 million from defendants.

56. As a result of defendants' dissemination of false and defamatory statements about Mr. Klausman, Mr. Klausman entitled to recover punitive damages in an amount no less than $5 million from defendants.

**WHEREFORE**, plaintiff demands judgment from a Jury as follows:

a. On the **First Cause of Action**, damages in an amount no less than $91,242.85 plus an additional sum representing an overpayment of taxes to be determined at

trial;

b. On the **Second Cause of Action**, damages in an amount no less 91,242.85;

c. On the **Third Cause of Action,** damages in an amount no less than $1 million;

d. On the **Second Cause of Action,** liquidated damages and attorneys' fees in an amount to be determined at trial;

e. On the **Third Cause of Action**, punitive damages in an amount no less than $5 million;

f. Granting plaintiff interest, costs and disbursements incurred in this action; and

e. Granting plaintiff such other and further relief as the Court deems just and proper.

Dated: New York, New York
      June 5, 2007

HIMMEL & BERNSTEIN, LLP

By: _____
TRACEY S. BERNSTEIN (TB-0405)
Attorneys for Plaintiff
928 Broadway, Suite 1000
New York, NY 10010
(212) 631-0200